SAMUEL AND JEAN MARIE RIVOLI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rivoli v. Commissioner
Docket No. 2439-90
United States Tax Court
T.C. Memo 1992-26; 1992 Tax Ct. Memo LEXIS 39; 63 T.C.M. (CCH) 1801; T.C.M. (RIA) 92026; January 13, 1992, Filed *39 Decision will be entered for respondent.
Patrick J. Lane, for petitioners. Randall P. Andreozzi, for respondent. GUSSIS, Special Trial Judge. GUSSIS
MEMORANDUM OPINION This case was assigned pursuant to the provisions of section 7443A(b). All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency in petitioners' Federal income tax for 1985 in the amount of $ 2,152 and in 1986 in the amount of $ 5,314. The issue presented is whether petitioners' horse-related activity during 1985 and 1986 was an activity engaged in for profit as required under section 183. Some of the facts were stipulated and they are so found. Petitioners resided in Spencerport, New York, at the time the petition herein was filed. Petitioners' involvement with horses began in or about 1979 when their daughter, Jean-Marie, who was then about 10 years old, started taking riding lessons. Petitioners bought a pony, Magnum, in or about 1981 for their daughter to ride. In 1983 Magnum was traded for a thoroughbred horse named Ghostbusters. Ghostbusters was *40 a "green" or untrained horse, which was purchased on the advice of one Jeff Sweeding, the owner of a horse farm, who was to become Ghostbusters' trainer. A second horse, Amadeus, was purchased in 1985. Ghostbusters was trained as a hunter-jumper, while Amadeus was trained as a jumper. Both horses were trained by Jeff Sweeding. Amadeus was eventually traded for another horse in 1989, which was in turn donated to a college in 1990. Petitioners reported gross receipts from their Schedule C activity, which they described as "show horses" in 1985 and 1986 in the respective amounts of $ 302 and $ 550. Petitioners claimed losses from this activity in 1985 and 1986 in the respective amounts of $ 9,634.34 and $ 11,224.00 which were disallowed by respondent. Section 183(a) provides that if an activity is not engaged in for profit, no deduction attributable to such activity shall be allowed except as otherwise provided in section 183(b). In determining whether an activity is one engaged in for profit, petitioners must prove an "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). *41 Petitioners bear the burden of proof. Rule 142(a); Abramson v. Commissioner, 86 T.C. 360, 370 (1986); Golanty v. Commissioner, 72 T.C. 411 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). The regulations set forth a number of factors for consideration when making a profit objective determination. They are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on the activity; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; (9) and elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs. No single factor, nor the existence of a majority of the factors, is controlling; rather "the facts and circumstances of the case in issue remain the primary test." Abramson v. Commissioner, supra at 371. *42 Greater weight is to be given to the objective facts than to the taxpayer's mere statement of his intent. Beck v. Commissioner, 85 T.C. 557, 570 (1985). The facts and circumstances of the present case clearly indicate that petitioners did not engage in their horse-related activities in the years 1985 and 1986 with the requisite profit objective. It is apparent that the acquisition of the pony, Magnum, and later, Ghostbusters, were prompted by Jean-Marie's evident enjoyment in riding. Ghostbusters was trained by Jeff Sweeding and Jean-Marie. Petitioners' daughter rode the horse frequently and, on occasion, took part in horse shows where Ghostbusters was entered. Petitioner Samuel Rivoli was fully occupied with his profession as an orthodontist and understandably was not actively involved in the "show horse" activity. Petitioner's wife was also employed at his dental practice. Petitioner's testimony, that he purchased Ghostbusters in 1983 with the hope of selling the horse for a profit and that he was motivated by the "profit potential" in acquiring Amadeus in 1985, is unsupported by any probative evidence. In short, such testimony is little more than speculation. *43 Petitioner did not obtain any lineage certificates when he purchased Ghostbusters and Amadeus. Petitioner kept a separate checking account for these activities and it appears that records were kept showing expenses incurred and any income generated by the activity. However, there is little indication in the record to show that petitioner made any real effort to make any informed business judgment with respect to the economic viability of the activity. Petitioner's losses in 1985 and 1986 were in the respective amounts of $ 9,634.34 and $ 11,224.00. The losses continued uninterruptedly in 1987, 1988, and 1989 in the respective amounts of $ 11,913, $ 11,512, and $ 16,796. We note that in the years involved petitioner was able to use the activity's losses to reduce the significant amounts of income earned from his practice as an orthodontist. The absence of any bona fide profit objective is further demonstrated by petitioner's failure to replace Mr. Sweeding, who had undertaken the training of Amadeus, when Mr. Sweeding discontinued his horse-training activity because of an injury. It appears that petitioner and Mr. Sweeding had agreed, when Amadeus was initially purchased, that *44 Mr. Sweeding would board the horse and transport it to horse shows at no cost to petitioners and, in addition, would pay a portion of such expenses as blacksmith and veterinarian fees as well as entry fees at horse shows. Any profit realized on the sale of the horse would be shared equally. This agreement was apparently completely abandoned when Mr. Sweeding withdrew from his training activities. As noted above, Amadeus was eventually traded for another horse in 1989 which in turn was donated to a college in 1990. Upon consideration of all the facts and circumstances we find that petitioners did not engage in their horse-related activities with an actual and honest objective of making a profit. Accordingly, respondent properly disallowed the losses attributable to the activities for the years at issue. Decision will be entered for respondent.